## Goodwin, Appellant, *v*. Schott.

*Affidavit of defence—Promissory note—Fraud—Misrepresentations.*

In an action on a promissory note, an affidavit of defence is sufficient to prevent judgment which avers that the note was given in payment of a medical practice and drug store ; that plaintiff showed to defendant false and fraudulent statements and accounts as to the receipts of the business ; that the store was almost destitute of drugs and medicine ; that the bottles were filled with colored waters ; that in numbering the prescriptions plaintiff skipped many numbers, so as to increase the total number, in order to deceive proposed purchasers ; that plaintiff's clerk had been instructed by plaintiff to show the accumulated receipts of many days to defendant so as to induce him to believe that they were the receipts of a single day ; and that just before the possession of the store was given to defendant, plaintiff removed all the costly and useful drugs.

Argued Jan. 19, 1894.    Appeals, Nos. 100 and 101, Jan. T., 1894, by plaintiff, Eugene B. Goodwin, from orders of C. P. No. 4, Philadelphia Co., June T., 1893, discharging rules for judgments for want of sufficient affidavits of defence in favor of defendants, Arnold Schott and Bertha Schott.    Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ.

Assumpsit on promissory notes.

Defendants filed similar affidavits of defence in each case, that filed by Arnold Schott averred as follows :

"The promissory notes sued upon in this case were made by Bertha Schott, his wife, and by him indorsed and delivered to the plaintiff in consideration of the promise and undertaking of the plaintiff to sell to deponent a medical practice and drug store in the city of Camden, N. J., the latter situate at Fifth and Clinton streets—which attempted sale was fraudulent, and

the said notes were obtained from him by the deceit and the false and fraudulent conduct and representations of the plaintiff, the facts and circumstances whereof being as follows:

" The deponent is a physician, and has for many years practiced in the city of Philadelphia. In 1889, his health failed and for two years he was compelled to leave Philadelphia and reside at Atlantic City, N. J. Early in the spring of 1891, having recovered sufficiently to resume work, his attention was called to an advertisement in the ' Public Ledger' of this city, in the month of April, 1891, offering for sale a drug store, with or without practice, at Camden, N. J., signed, Dr. Goodwin, Kenton, Delaware. The deponent communicated with the plaintiff, the advertiser, and negotiations took place between them. The plaintiff represented that his practice, though only two years old, averaged a return of $1,200 a year, and was constantly increasing. That the stock of the drug store was worth $2,000. That it was fully stocked and compared in this respect with the best in Camden—and that its daily receipts ran from six to fourteen dollars, and on one occasion during the negotiations he exhibited to deponent what he represented to be a copy of his ledger, showing cash receipts of the drug store for the then preceding twelve months, which ranged, as it appeared, from $225 to $400 per month.

" During these negotiations which lasted over a month, the deponent repeatedly asked for opportunity to inspect the stock of the said store; but by ingenious pretexts these requests were evaded by the plaintiff, either by pretending want of time on the part of the plaintiff, or the excuse that he was rarely in Camden, or that he was detained by business in Delaware, or he would fail to be present on appointment and his representative would profess not to have the keys of the store. These devices were plausible and the deponent did not suspect that the plaintiff was contemplating a fraud.

" On May 14, 1891, deponent and his wife met the plaintiff at the store. The latter urged deponent to close the sale at once, as he expected another buyer at one o'clock, which hour was then at hand.

" Deponent repeated that he had not been afforded an opportunity to examine the stock and that he relied wholly on the plaintiff's representations. The latter said the stock of drugs

was worth fully $1,500, not including the fixtures and soda
fountain. The deponent then closed the purchase, and gave
notes in suit (for $1,500), and a bill of sale of the stock and
certain fixtures of said store was taken; but no assignment of
the said alleged medical practice was made or any stipulations
concerning the same.

"On taking possession of the store, an inspection and account
of the stock exposed the premeditated fraud practiced upon the
defendant by the plaintiff. The stock was almost destitute of
the drugs and medicines absolutely required in a drug store.
What tinctures and syrups and other preparations there were,
which are usually made in the store, were worthless, not being
made in accordance with the U. S. Pharmacopœia and of only
half the strength prescribed. The herbs, roots, barks, and leaves
which ought to be renewed every season, were so stale as to be
utterly useless and fit only to be thrown away, the most of them
having been there from six to ten years, as deponent is informed
and believes; most of the drawers and other receptacles were
empty and the rest partly filled with spoiled and rotten material.

"There was almost no stock at all of drugs used for filling
prescriptions. The cases and windows were filled mostly with
bottles containing colored water—nearly all the perfume bot-
tles contained merely water. Few even of the cheapest articles
in general use needed to carry on a drug store were there.
Even the nominal value of the whole was less than $100, and
the most of that was in patent medicines which were obsolete
and unsalable.

"The plaintiff's said ledger and any other book showing the
amount of his stock and business had been removed by him.
On examining the file of prescriptions for the preceding five
months up to date of deponent's purchase it was found that
the plaintiff systematically and almost daily, in numbering the
prescriptions, skipped many numbers, in order to deceive any
proposed purchaser, so that it would appear at a glance that he
had filled twice or more prescriptions than he really had done.

"Further, the deponent says, that he is informed, believes,
and expects to be able to prove at the trial of this case, that
the plaintiff said to this clerk, pending the aforesaid negotia-
tions between him and deponent, that he had a proposed pur-
chaser, meaning the deponent, who had urged him at different

times to be allowed to examine the store, but that he, the plaintiff, had to refuse it, as he would not have any buyer if he did not succeed in preventing that.

" Also, that if the deponent should call unexpectedly in the plaintiff's absence he would not purchase if allowed to see the daily receipts in the drawer, and that the clerk should show the accumulated receipts of different days to induce the belief in the mind of deponent that they were the receipts of a single day ; and on another occasion when the deponent was expected, the said clerk was urged by plaintiff to show deponent the amount of a large bill that had been paid in order to deceive him as to the amount of the daily receipts.  Further, that the plaintiff had himself purchased the said drug store two years before the sale to deponent, and had systematically depleted the stock and turned it into cash.  Further, that just before possession of the store was given to deponent the plaintiff carried off from the store to Delaware all the drugs which were costly and used in putting up prescriptions.  Further, that the receipts from the drug store during the plaintiff's ownership had been always very small and hardly covered the expenses, and that the plaintiff's practice amounted to almost nothing.

" On discovering by the investigation and account of the stock the fraud and deceit that had been practiced upon him by the plaintiff, the deponent immediately abandoned the said store, notified the plaintiff and demanded the return of the notes in suit.

" And a proceeding was instituted by bill in the Court of Chancery of New Jersey on behalf of deponent's wife against the plaintiff, wherein, on May 23, 1891, as deponent is advised by counsel, a restraining order or injunction was signed by said court enjoining the said plaintiff from negotiating, selling, assigning, or in any wise disposing of the said notes ; since which time and until the commencement of this suit, over two years, the deponent had not heard of or from the plaintiff or the said notes, except the bank notice of maturity of the first note in July, 1891."

Rule for judgment discharged.  Plaintiff appealed.

*Error assigned* was above order.

*Alfred D. Wiler*, for appellant, cited: Byrne v. Stewart, 23 W. N. 363 ; Taylor v. Saurman, 110 Pa. 3 ; Leaming v. Wise, 73 Pa. 173 ; Morrow v. Rees, 69 Pa. 368 ; Beetem v. Burkholder, 69 Pa. 249 ; Pearsoll v. Chapin, 44 Pa. 9 ; Richards v. Bisler, 3 W. N. 485.

*Henry C. Titus*, for appellee, not heard, cited: Bower v. Fenn, 90 Pa. 359; Nelson v. Martin, 105 Pa. 229 ; Lord v. Grow, 39 Pa. 88 ; Croyle v. Moses, 90 Pa. 250 ; Erie City Iron Works v. Barber, 106 Pa. 125.

PER CURIAM, January 29, 1894:

Assuming, as we must in cases of this class, that the defendant is prepared to substantiate, by competent evidence, the material facts averred in his affidavit of defence, there was no error in discharging plaintiff's rule for judgment. The affidavit of defence is quite sufficient to entitle the defendant to a trial by jury.

Judgment affirmed.